**Affirmed and Opinion filed December 29, 2011.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-10-00393-CR**
**NO. 14-10-00394-CR**

**EMEKA MICHAEL UYAMADU, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1138060; 1176507**

## O P I N I O N

A jury convicted appellant Emeka Michael Uyamadu of theft[1] in cause number 1138060 and assessed punishment of ten years' confinement. A jury also convicted appellant of witness tampering[2] in cause number 1176507 and assessed punishment at two years' confinement. The trial court ordered the sentences to be served concurrently. Appellant raises numerous issues on appeal. We affirm.

---

[1] Tex. Penal Code Ann. § 31.03(a), (b)(2) (Vernon 2011).

[2] Tex. Penal Code Ann. § 36.05(a)(1) (Vernon 2011).

**Background**

Police Officer Kenneth Kalka was dispatched to a vehicle burglary in a hotel parking lot near Intercontinental Airport at about 9:30 a.m. on June 6, 2007. Several "Toughbook" laptop computers containing specialized software for hospital emergency management and preparedness were stolen from the vehicle. Officer Kalka was able to lift a palm print from the vehicle, but the print did not match the appellant.

Two of the Toughbook computers that were stolen in the June 6 burglary were discovered in appellant's luggage when the luggage set off the alarm at a baggage check location at Intercontinental Airport on July 12, 2007. Appellant intended to travel to Nigeria and had seven laptop computers in his luggage. Before appellant boarded his plane to fly to Nigeria, Customs Officer Robert Neal asked appellant if he had filed the required shipper's export declaration in order to take the computers out of the country. Appellant acknowledged that he did not file the declaration and told Officer Neal to contact his secretary regarding invoices for the computers he had in his luggage. Appellant boarded his plane and left the computers in the custody of customs officials.

Officer Neal brought the computers taken from appellant's luggage to Houston Police Officer Terry Robertson and ICE Agent Deanna Overholt. Officer Robertson and Agent Overholt ran the computers' serial numbers in national and Texas databases and determined that the two Toughbook computers appellant had in his luggage had been stolen in the June 6 burglary. They asked Special Agent Dan Young to inspect the computers and determine if anything on the computers had been altered. Agent Young noticed that the two stolen Toughbook computers were expensive and contained expensive specialized software that he had not seen before. He also noticed that the last access date on some of the computer files on the hard drive was July 5 or 6, 2007.

When appellant returned from Nigeria on August 13, 2007, Officer Robertson and Agent Overholt met appellant at the airport and interviewed him. Appellant stated that he had bought the computers at internet auctions in May 2007. He stated that he did not know much about computers and that his friend, Chike Nzewi, would inspect computers

2

before appellant purchased them.

Appellant later was charged with theft of the two stolen Toughbook computers. Several months after appellant was charged with theft, Officer Robertson and Agent Overholt received information that prompted them to begin a new investigation into whether appellant had tampered with a witness. The investigation revealed that Sabrina Belfon had been contacted numerous times by Nzewi, who was appellant's friend and Belfon's former boyfriend, about agreeing to "take the charge" of theft for appellant in exchange for money. Working with law enforcement, Belfon agreed to wear a concealed microphone and record the conversations during a meeting she scheduled with appellant and Nzewi.

Belfon met with Nzewi and appellant for several hours on May 17, 2008. During the meeting, appellant told Belfon about the theft charges against him and explained how Belfon was supposed to "take the charge" for him.

After the May 17 meeting, Nzewi tried to contact Belfon by telephone numerous times. Belfon did not answer Nzewi's calls until a monitored call was set up by police on June 18, 2008. Nzewi asked Belfon to meet with him so Belfon could write her statement and give it to appellant's attorney. Appellant later was indicted for tampering with a witness.

A jury trial was held from April 16 to April 23, 2010. The jury convicted appellant of theft in cause number 1138060 and assessed punishment of ten years' confinement; the jury also convicted appellant of tampering with a witness in cause number 1176507 and assessed punishment at two years confinement. Appellant timely filed his notice of appeal raising six issues on appeal.

**Analysis**

**I.      Sufficiency of the Evidence**

In his first and second issues, appellant argues that the evidence is insufficient to support his theft conviction in cause number 1138060 because the evidence does not establish that (1) the alleged value of the two Toughbook computers is at least $20,000 as

3

required by the indictment and jury charge; and (2) "appellant personally stole the computers or appropriated the computers with knowledge that they had been stolen by somebody else." In his third issue, appellant contends that the evidence is insufficient to support his conviction for tampering with a witness in cause number 1176507 because the evidence does not establish that Belfon was a "prospective witness."

### A. Standard of Review

When reviewing the sufficiency of evidence, we view all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). We may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Jefferson v. State*, 346 S.W.3d 254, 256 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (expressing that jury may choose to believe or disbelieve any portion of the testimony). "Our review of 'all of the evidence' includes evidence that was properly and improperly admitted." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Id.* In viewing the record, we treat direct and circumstantial evidence equally; circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes

4

the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

### B.     Value of Stolen Computers

In his first issue, appellant contends that the evidence is insufficient to establish that the value of the stolen computers is at least $20,000 as required by the indictment and the jury charge.

Douglas Havron, the complainant and owner as alleged in the indictment and stated in the jury charge, testified that each computer cost $4,800; the installed host software for each computer cost $1,995; the installed command software for each computer cost $2,995; and the installed mobile software needed for each computer cost $1,995. The total is $23,570. Appellant contends this evidence does not satisfy the $20,000 threshold because the (1) computers themselves cost $4,800 each; and (2) the value of software installed on the computers cannot be considered in determining their value.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. Tex. Penal Code Ann. § 31.03(a) (Vernon 2011). The offense is "a felony of the third degree if the value of the property stolen is $20,000 or more but less than $100,000." *Id.* § 31.03(e)(5).

Appellant argues that the jury charge did not define the term "computer," and that a hypothetically correct jury charge would have contained a definition of that term. Because neither the theft chapter nor the general provisions and definitions in the Penal Code contain a definition for the term "computer," appellant argues that a hypothetically correct jury charge would have included the definition for the term "computer" contained in Penal Code Chapter 33.

Chapter 33, entitled "Computer Crimes," provides different definitions for the term "computer," "computer network," "computer program," "computer services," "computer system," and "computer software." *See* Tex. Penal Code Ann. §§ 33.01(4)-(9) (Vernon 2011). "Computer" is defined in Chapter 33 as "an electronic, magnetic, optical,

electrochemical, or other high-speed data processing device that performs logical, arithmetic, or memory functions by the manipulations of electronic or magnetic impulses and includes all input, output, processing, storage, or communication facilities that are connected or related to the device." *Id*. § 33.01(4).

Based on the Chapter 33 definition, appellant argues that the value of the two stolen computers must be measured without considering the value of software installed on them. Appellant acknowledges that all of the definitions of Chapter 33 are prefaced by the words, "In this chapter." Appellant nevertheless argues that "[t]here is no reason to think the Legislature intended to adopt precise definitions for use in one chapter but did not want those definitions used in a different chapter."

Statutory construction is a question of law. *Harris v. State*, No. PD–0945–10, 2011 WL 5375130, at \*3 (Tex. Crim. App. Nov. 9, 2011). In construing a statute, we look first to the statute's literal text, and we read words and phrases in context and construe them according to rules of grammar and usage. *Id*. We must "'presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.'" *Id*. (quoting *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997)). Where the statute is clear and unambiguous, the legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). "Under the canons of statutory construction, we are to construe a statute according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008).

Chapter 33 of the Penal Code sets out the offenses that constitute "Computer Crimes." *See* Tex. Penal Code Ann. §§ 33.01-33.07 (Vernon 2011). As in many other chapters of the Penal Code, Chapter 33 contains definitions applicable to its particular chapter. To show that the definitions contained in Section 33.01 of Chapter 33 contain only definitions applicable to Chapter 33 offenses, Section 33.01 is prefaced by the words: "In this chapter." These words are plain and unambiguous. Interpreting these

words to limit Section 33.01's definitions to provisions contained in Chapter 33 would not lead "to absurd results that the legislature could not have intended."

We must presume the Legislature meant what it expressed when prefacing the definitions in Section 33.01 with the clear and unambiguous words, "In this chapter." These words express that the definitions apply to offenses under Chapter 33. If the Legislature intended for the definitions in Section 33.01 to be applicable to other chapters of the Penal Code, it would not have prefaced the definitions with the words, "In this chapter;" additionally, it could have included the definitions in Section 1.07 of the "General Provisions" of Chapter one of the Penal Code. All definitions in Section 1.07 are prefaced by the words, "In this code." *See* Tex. Penal Code Ann. § 1.07(a) (Vernon 2011)

Accordingly, we reject appellant's reliance on Chapter 33 to argue that a hypothetically correct jury charge under Chapter 31 would have defined the term "computer" by distinguishing between hardware and software. Appellant cites no caselaw, and we have found none, supporting the proposition that the value of software installed at the time of the appropriation should be excluded when calculating the value of the appropriated computer under Chapter 31.

Section 31.08 defines "value" in theft prosecutions as "(1) the fair market value of the property or service at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." Tex. Penal Code Ann. § 31.08(a) (Vernon 2011). Fair market value, though not statutorily defined, is defined by caselaw as the amount the property would sell for in cash given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991); *Valdez v. State*, 116 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Put another way, fair market value for purposes of a theft prosecution may be expressed as "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *Valdez*, 116 S.W.3d at 98 n.1. No one method for calculating fair market value has been deemed exclusive.

7

*Keeton*, 803 S.W.2d at 305.  An owner may testify either in terms of purchase price or replacement cost, and is presumed to be testifying to an estimation of fair market value. *Valdez*, 116 S.W.3d at 98.

Highly specialized host, command, and mobile software had been installed on the two stolen Toughbook computers; this software was part of the computers "at the time and place of the offense" for purposes of calculating the computers' fair market value under Chapter 31.  *See Townsend v. State*, No. 06-05-00130-CR, 2006 WL 2683345, at *4 (Tex. App.—Texarkana Sept. 20, 2006, pet. ref'd) (mem. op., not designated for publication) (where appellant challenged the sufficiency of the evidence to establish the value of stolen laptop computer at the time of the offense, court included software in the value of laptop computer).  Viewed in the light most favorable to the verdict, Havron's testimony as to the $23,570 value of the two Toughbook computers and the specialized software they contained suffices to establish that the two computers had a value of at least $20,000 when they were appropriated.

Accordingly, we overrule appellant's first issue.

### C.    Culpability

In his second issue, appellant contends that the "evidence failed to prove beyond a reasonable doubt that the appellant personally stole the two computers or that he appropriated the computers with knowledge that they had been stolen by somebody else."

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property.  Tex. Penal Code Ann. § 31.03(a).  "Appropriate" means to acquire or otherwise exercise control over property other than real property.  Tex. Penal Code Ann. § 31.01(4)(B) (Vernon 2011).  Appropriation is unlawful if (1) it is without the owner's effective consent; or (2) the property is stolen and the actor appropriated the property knowing it was stolen by another.  Tex. Penal Code Ann. 31.03(b).

Because appellant was not tried for unlawfully appropriating the two computers during the initial vehicle burglary on June 6, 2007, the State "was not required to prove

8

that appellant participated in the 'initial acquisition'" of the computers; rather, the State was required to show that appellant appropriated the computers knowing they had been stolen. *See Steward v. State*, 830 S.W.2d 771, 775 (Tex. App.—Houston [14th Dist.] 1992, no pet).

Proof of a culpable mental state almost invariably depends upon circumstantial evidence. *Grant v. State*, 278 S.W.3d 836, 839 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A jury can infer knowledge from all the circumstances, including the acts, conduct, and remarks of the accused and the surrounding circumstances. *Id*. Knowledge that property was stolen can be shown by circumstantial evidence. *Cudleigh v. State*, 540 S.W.2d 314, 317 (Tex. Crim. App. 1976).

When a defendant is found in possession of recently stolen property and, at the time of arrest, he fails to provide a reasonable explanation showing his honest acquisition of the property, the factfinder may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76-77 (Tex. Crim. App. 1983); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006).

The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Thus, we defer to the jury's responsibility to fairly resolve conflicts in the evidence and determine whether an explanation is reasonable and probably true, considering that a jury is not required to accept the explanation the defendant offered. *See Prodan v. State*, 574 S.W.2d 100, 103 (Tex. Crim. App. 1978).

Evidence at trial showed that appellant intended to travel to Nigeria on July 12, 2007 when his luggage containing seven laptop computers set off the alarm at the baggage check location. Among the seven laptops were two Toughbook computers that had been stolen in a June 6, 2007 vehicle burglary.

During an August 13, 2007 interview with Officer Robertson and Agent Overholt after he returned from Nigeria, appellant claimed he had purchased the computers at internet auctions no later than May 2007. Officer Robertson and Agent Overholt

9

presented appellant with invoices they had received from appellant's secretary, but the computer serial numbers on the invoices did not match the serial numbers on the stolen Toughbook computers. Even after the officers told appellant that the two Toughbook computers could not have been purchased in May because they had been stolen in a June 6 burglary, appellant maintained that he last bought a computer at an auction on May 17, 2007. He wrote a statement during the August 13, 2007 interview reflecting that he purchased computers for $3,952 and made his last computer purchase on May 17, 2007.

When Officer Robertson and Agent Overholt informed appellant that the Toughbooks were stolen, appellant did not react or "say anything . . . he just stared straight ahead." After that, appellant no longer was helpful and outspoken but "totally shut down." Appellant told the officers that he stored all of his computers at his office on Airline Drive and consented to a search of the office. At first, appellant claimed he did not have a spare key for the office; then, he gave them a wrong key and the officers could not enter appellant's office until he brought the correct key. Appellant claimed that there would be ten stacked laptop computers at the office and that no one had access to his office during his trip to Nigeria. When no computers could be found, appellant said he was shocked, although he did not appear to be shocked. Appellant could not explain where the computers were and started changing his story, telling the officers that a person named Orey had access to his office.

Evidence also established that appellant's friend, Chike Nzewi, contacted Sabrina Belfon to persuade her "to agree to take a charge for some stolen property" for appellant after appellant had been charged with theft of the two Toughbook computers. Belfon met with appellant and Nzewi on May 17, 2008 for several hours; this meeting was recorded and videotaped. Belfon testified that during the meeting, appellant told Belfon about the theft charges against him and explained his plan regarding how Belfon was supposed to "take the charge" for him. Belfon was supposed to tell the prosecutor that she had delivered the stolen Toughbook computers to one of appellant's offices but that she did not "know too much about them" and did not know how she got the computers. Appellant and Nzewi insisted on taking Belfon to appellant's office so she could

10

familiarize herself with the surroundings.

According to Belfon, appellant explained that the Toughbooks were "special computers" that were used by police officers or oil company employees in the field, but he never told her where the computers actually came from. Appellant told Belfon that he bought computers wholesale online through different websites and that he stopped purchasing computers sometime in May. Appellant also told Belfon that "if he had known that they were stolen in June he would have told them [the investigators] that it was June, that he would have had purchased the computers." Appellant agreed with Belfon that she probably would be charged with theft or possession of stolen property and assured her that he would help her hire an attorney.

Belfon testified that appellant paid her $1,000 and she was to receive an additional $2,000 after she made a statement. Appellant expected Belfon to lie to his attorney, lie to the district attorney, and testify falsely in court. Appellant told Belfon that he did not believe his case would go to trial, but, if it did go to trial, Belfon was expected to testify and "tell a lie."

The jury also heard a taped telephone conversation between Nzewi and Belfon that occurred on June 18, 2008. Nzewi had called Belfon to set up a meeting with her so Belfon could write her statement and give it to appellant's attorney.

Considering all of the circumstances, including the acts, conduct, and remarks of appellant, it was within the jury's province to consider and reject appellant's contentions that he (1) could have "unwittingly bought these two Toughbooks from a thief;" or (2) merely "gave an incorrect explanation when confronted by investigators" on August 13, 2007 because he was confused after returning from a long trip. Viewed in the light most favorable to the verdict, we conclude that the evidence is sufficient to establish that appellant "appropriated the computers with knowledge that they had been stolen."

Accordingly, we overrule appellant's second issue.

### D. Prospective Witness

In his third issue, appellant attacks the witness tampering conviction by arguing

11

that the evidence was insufficient to prove Belfon was a "prospective witness." Appellant contends Belfon was not a "prospective witness" because she was not supposed to "testify for the State or give information leading to an investigation, arrest, or prosecution."

Stating that his sufficiency argument "actually is a question of statutory interpretation," appellant first argues that no evidence supports a finding that Belfon was a "prospective witness" within the meaning of Section 36.05. *See* Tex. Penal Code Ann. § 36.05 (Vernon 2011). Acknowledging that "witness" and "prospective witness" are not defined in the Penal Code, appellant cites cases in which the Court of Criminal Appeals analyzed these terms as used in the retaliation provision of the Penal Code. *See Cada v. State*, 334 S.W.3d 766, 770–76 (Tex. Crim. App. 2011); *Morrow v. State*, 862 S.W.2d 612, 614–15 (Tex. Crim. App. 1993); *see also* Tex. Penal Code Ann. § 36.06 (Vernon 2011) (retaliation statute).

In these cases, the court recognized that "[a] central purpose of the retaliation statute is to encourage a specified class of citizens — which includes public servants, witnesses, prospective witnesses, and informants — to perform vital public duties without fear of retribution." *Cada*, 334 S.W.3d at 771; *see also Morrow*, 862 S.W.2d at 615. Those duties "'may include reporting criminal activities, testifying in official proceedings, or cooperating with the government in a criminal investigation.'" *Cada*, 334 S.W.3d at 771 (quoting *Morrow*, 862 S.W.2d at 615).

Appellant argues that the purpose of the witness tampering statute is similar — namely, to prevent an individual from tampering with witnesses and prospective witnesses who possess inculpatory information and are going to testify on behalf of the government. According to appellant, Belfon was not a prospective witness because she was not going to testify on behalf of the State.

In support of this argument, appellant cites a witness tampering case in which the defendant tampered with one of the State's prospective witnesses. *See Arnold v. State*, 68 S.W.3d 93, 96–101 (Tex. App.—Dallas 2001, pet ref'd) (concluding evidence sufficient

to support finding that defendant tampered with prospective State witness; also, citing cases from other jurisdictions involving tampering with government witnesses and prospective witnesses). He also cites a capital murder case involving retaliation. *See Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002) (concluding that the retaliation "statute does not require that a person's testimony be 'likely' in order for that person to be a prospective witness").

Prior applications of the witness tampering statute in situations involving a prospective State witness do not preclude applying the statute in situations involving a prospective defense witness. To determine the scope of the terms "witness" and "prospective witness," we look first to the statute's literal text; we read the words in context and construe them according to the rules of grammar and usage. *See Harris*, 2011 WL 5375130, at *3. We must "'presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.'" *Id.* (quoting *Hardy*, 963 S.W.2d at 520). It is not for the courts to add or to subtract from a statute. *Boykin*, 818 S.W.2d at 785.

Under section 36.05, a person commits witness tampering if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding to (1) testify falsely; (2) withhold any testimony, information, document, or thing; (3) elude legal process summoning him to testify or supply evidence; (4) absent himself from an official proceeding to which he has been legally summoned; or (5) abstain from, discontinue, or delay the prosecution of another. Tex. Penal Code Ann. § 36.05(a) (Vernon 2011).

Subsections (2) through (5) refer to preventing testimony or evidence from being presented at an official proceeding. In the context of a criminal trial, these subsections may apply to situations in which a person tampered with a State witness. *See, e.g.*, *Arnold*, 68 S.W.3d at 96-101 (defendant intended for prospective State witness to elude legal process); *Nunez v. State*, 27 S.W.3d 210, 218-19 (Tex. App.—El Paso 2000, no pet.) (defendant intended for prospective State witness to "abstain from or discontinue the criminal and disciplinary charges"); *Morlett v. State*, 656 S.W.2d 603, 604 (Tex. App.—

Corpus Christi 1983, no pet.) (defendant attempted to coerce State witness before and during trial to withhold testimony). Other applications are possible.

Subsection (1) reads "to testify falsely." Tex. Penal Code Ann. § 36.05(a)(1). Nothing in the statute indicates that this section applies only to the State's witnesses, nor has any court construed the language so narrowly. Furthermore, "official proceeding" as used in the Penal Code means "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id*. § 1.07(a)(33). Thus, the witness tampering statute applies beyond criminal trials. Construing the statute according to its plain meaning, we conclude that subsection (1) refers to soliciting any witness or prospective witness "to testify falsely," including a witness or prospective witness for the defense.

Appellant further argues that the evidence is legally insufficient to support his witness tampering conviction because "[t]here was absolutely no evidence that the appellant (or Nzewi, for that matter) believed Belfon was a prospective witness for the State in the theft case when their discussions occurred." As we have discussed above, section 36.05 applies equally to prospective witnesses for the State and for the defense. Therefore, it was not necessary for the evidence to establish that appellant believed "Belfon was a prospective witness for the State in the theft case." Rather, the evidence is sufficient in this case if it establishes that appellant believed Belfon would be a prospective witness for the defense in the theft prosecution against him.

The evidence establishes that Belfon met with appellant and Nzewi for several hours on May 17, 2007, after Nzewi contacted Belfon numerous times to "agree to take the charge" of theft for appellant in exchange for money. At the meeting, appellant paid Belfon $1,000 and promised to pay her $2,000 after she made a statement. Belfon also testified that, as part of the agreement to "take the charge" for appellant, he expected Belfon to lie to his attorney and the district attorney, and also testify falsely in court if the theft case went to trial. This evidence is sufficient to establish that appellant believed Belfon would be a prospective defense witness in his theft case.

14

Appellant also states in his brief that Belfon "did not become a witness at all," suggesting that Belfon in fact had to testify on his behalf. However, nothing in section 36.05 requires a prospective witness to actually testify. A person commits the offense of tampering with a witness if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a prospective witness in an official proceeding to testify falsely. Tex. Penal Code Ann. § 36.05(a)(1). The evidence discussed above sufficiently establishes that appellant, with the intent to influence Belfon, paid $1,000 and agreed to pay another $2,000 to her in return for Belfon lying to appellant's attorney and the district attorney, and also testifying falsely in court in his theft case.

Accordingly, we overrule appellant's third issue.

## II.     Jury Charge

In his fourth issue, appellant contends that "the trial court erred in the application paragraph of the jury charge" in connection with the witness tampering case by substituting the words "prospective witness" for "witness." Appellant contends thae words "prospective witness" in the charge erroneously allowed appellant to be convicted even if appellant "was only trying to influence Belfon's conduct as a 'prospective' witness."

When we review a claim of jury charge error, we determine whether there is error. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If there is error in the charge and appellant objected to the error at trial, reversal is required if the error "is calculated to injure the rights of the defendant," which has been defined to mean that there is "some harm." *Id*. (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the error was not objected to, it must be "fundamental" and requires reversal only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id*.

Section 36.05(a)(1) provides that a person commits the offense of tampering with witness if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a prospective witness in an official proceeding to testify falsely. Tex. Penal

Code Ann. § 36.05(a)(1). The indictment in this case alleged that appellant "on or about May 17, 2008, did then and there unlawfully, with intent to influence SABRINA BELFON, a PROSPECTIVE WITNESS, in an official proceeding, to wit: [the computer theft prosecution] OFFER AND CONFER AND AGREE TO CONFER A BENEFIT ON SABRINA BELFON to TESTIFY FALSELY."

The abstract instruction in the jury charge regarding the witness tampering offense tracked the statute's language; the application paragraph in the jury charge tracked the language in the indictment. The application paragraph stated: "Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of May, 2008, in Harris County, Texas, [appellant] did then and there unlawfully, with intent to influence Sabrina Belfon, a prospective witness, in an official proceeding, to-wit: [the computer theft prosecution] offer or confer or agree to confer a benefit on Sabrina Belfon to testify falsely, then you will find the defendant guilty of tampering with a witness, as charged in the indictment."

Appellant argues that this instruction was erroneous because it "did not require proof of the same intent that the statute requires." According to appellant, "[t]he charge seems to authorize conviction if the appellant was only trying to influence Belfon's conduct as a 'prospective' witness. For example, bribing Belfon to write a letter to defense counsel, who might in turn show it to a prosecutor prior to trial, would not amount to an effort to get her to testify falsely."

Appellant's contention that the charge authorized the jury to convict appellant for "bribing Belfon to write a letter to defense counsel" is not supported by the application paragraph because it clearly requires the jury to find that appellant had the intent to influence Belfon to "testify falsely." Equally unsupported is appellant's contention that the "jurors easily could have been misled" into believing that the application paragraph allowed them to convict appellant for intending to "encourage Belfon" to write "a false and misleading letter, or give[e] a false affidavit, to the appellant's attorney." This contention fails because the application paragraph required the jury to find that appellant, "did then and there unlawfully with intent to influence Sabrina Belfon, a prospective

16

witness, in an official proceeding . . . offer or confer or agree to confer a benefit on Sabrina Belfon to ***testify falsely***." (emphasis added).

Assuming for argument's sake that "the trial court erred in the application paragraph of the jury charge . . . by substituting 'prospective witness' for 'witness,'" we conclude that appellant was not harmed by the alleged charge error.

Because appellant failed to object to any alleged charge error, reversal is warranted only if appellant was egregiously harmed. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). To determine "egregious harm," we examine "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). The appellant must have suffered actual, rather than theoretical, harm. *Id.* "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id.* (quoting *Almanza*, 686 S.W.2d at 172.).

Appellant argues that "resort[ing] to the 'entire charge' does not ameliorate the error" because the "terms 'witness' and 'prospective witness' were not defined" in the jury charge and "one or more of the jurors might have thought that there was no difference." However, the terms "witness" and "prospective witness" are not statutorily defined. *See* Tex. Penal Code Ann. §§ 1.07(a); 36.01; 36.05 (Vernon 2011). We presume that jurors give terms their usual meaning. *See Russeau v. State*, 291 S.W.3d 426, 435 (Tex. Crim. App. 2009); *see also Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009); *Fuller v. State*, 253 S.W.3d 220, 235 (Tex. Crim. App. 2008).

Appellant further contends that this was "not a case where the evidence was so overwhelming that a guilty verdict was inevitable, with or without a correct charge." He states that the recordings played for the jury of Belfon's meeting with appellant and Nzewi "were lengthy and difficult to understand." Appellant admits that "[o]nce or twice Belfon said that appellant indicated that she might have to testify falsely," but he asserts

17

"there was ample reason to doubt Belfon's credibility."

As we have stated earlier, the jury is the exclusive judge of the credibility of witnesses and the weight of the evidence. *Isassi*, 330 S.W.3d at 638. At trial, Belfon testified that she met with appellant and Nzewi for several hours on May 17, 2007, after Nzewi contacted Belfon numerous times to "agree to take the charge" of theft for appellant in exchange for money. This meeting was audio and video-taped. Although the meeting lasted a few hours and the recordings reflect that appellant spoke with a heavy accent, this does not mean that the jury was unable to understand the conversations among Belfon, appellant and Nzewi.

Belfon testified that appellant told her about the theft charges against him during the meeting and explained his plan regarding how he wanted Belfon to "take the charge" for him. Appellant told Belfon to tell the prosecutor that she had delivered the stolen computers to appellant's office, and that she otherwise does not know much about the computers. Appellant paid Belfon $1,000 and promised to pay her $2,000 after she made a statement. Appellant expected Belfon to lie to his attorney and the district attorney, and also to testify falsely in court if his theft case went to trial. Belfon's testimony is largely confirmed by the recordings. The evidence establishes that appellant offered to pay Belfon money in exchange for her anticipated false testimony should his theft case proceed to trial.

Finally, appellant argues that he was harmed when the State "attacked the argument made by Nzewi's counsel, which focused on why intent related to testimony as a witness, as a misstatement of law." It is not entirely clear what appellant's specific complaint is; nonetheless, as addressed in greater depth in our analysis of appellant's fifth issue, any complaint regarding his co-defendant's closing argument is not preserved for review. Additionally, the State never mentioned any of the objected-to closing statements made by appellant or his co-defendant. The State's closing argument consisted predominantly of a summation of the evidence for both the theft and witness tampering offenses. Appellant's trial counsel spent the majority of his time arguing to the jury that the evidence is insufficient to support a conviction for theft. In the

18

remaining time, appellant's counsel focused on discrediting Belfon as a witness based on her criminal record.

Based on the record before us, we conclude that, even if we assume charge error was committed, appellant's right to a fair and impartial trial was not impaired and appellant has not suffered egregious harm in this case.

Accordingly, we overrule appellant's fourth issue.

### III.    Jury Arguments

#### A.    Co-Defendant's Closing Argument

In his fifth issue, appellant argues that the trial court erroneously sustained several objections to a portion of co-defendant Nzewi's closing argument with respect to the offense of witness tampering.  Appellant complains the trial court should not have sustained the State's objections that argument by co-defendant's counsel was an incorrect statement of law and should not have instructed the jury to disregard the argument. Appellant contends that the trial court's ruling against his co-defendant also constitutes "error against the appellant."

Appellant's complaint concerns the following exchange:

CO-DEFENDANT'S COUNSEL: . . . but you boil it all down and an individual has to convey a benefit or offer to convey a benefit to a prospective witness to get that witness to testify falsely. Not to give a statement, not to write a note, not to accept responsibility, not to do any of these other things.  They have to be told, they have to be trying to get this individual to testify, and testify means something.

You testify in an official proceeding is the other part of the charge. You read it. You testify in an official proceeding.  You have to go to a proceeding.  You have to raise your hand.  You have to swear to tell the truth.

THE STATE: Objection, your Honor, that's a misstatement of the law.

THE COURT: That's sustained.

CO-DEFENDANT'S COUNSEL: To testify in an official proceeding, you have to take an oath, and you have to be present to testify.  Now —

THE STATE: Objection, your Honor, that's a misstatement of the law.

THE COURT: That's sustained.

CO-DEFENDANT'S COUNSEL: It could include a deposition which also would require taking an oath, swearing to tell the truth, raising your hand, but if you were going to testify in an official proceeding, that's not a handwritten note that you give to somebody else.

THE STATE: Objection, your Honor, that's a misstatement of the law.

THE COURT: That's sustained.

THE STATE: Ask for an instruction for the jury to disregard.

THE COURT: The jury will disregard counsel's last statement.

CO-DEFENDANT'S COUNSEL: I'm sorry, your Honor.  My statement was that a handwritten note that was not under oath is not testimony.  Your ruling is that that is testimony?

THE COURT: I've made my ruling.

Appellant argues that, although the trial court made its rulings during his co-defendant's closing argument, the trial court's erroneous rulings nonetheless "should be treated as error against both" appellant and co-defendant because "appellant's position on this issue was the same as [co-defendant] Nzewi's: the State had to prove beyond a reasonable doubt that the appellant intended to induce Belfon to give false testimony; not just make a false note or letter."  Appellant contends he was not required to address the State's objections at trial, or to object to the trial court's instruction to disregard co-defendant's argument.

To support his contention that the trial court's ruling constituted "error against the appellant," appellant cites *Woerner v. State*, 576 S.W.2d 85, 86 (Tex. Crim. App. 1979). In *Woerner*, two defendants, Jones and Woerner were tried together but each was represented by separate counsel.  *Id.*  When the trial court overruled Jones's counsel's objection to the State's jury argument, Woerner's counsel noted his "exception" to the trial court's ruling.  *Id.*

The Court of Criminal Appeals held that Woerner preserved error to the State's jury argument by, in effect, expressly "adopting" his co-defendant's objection to the argument.  *Id.*  Thus, a defendant may adopt an objection made by a co-defendant and preserve error when there is sufficient indication in the record of his intent to adopt the

objection. *See id.*; *see also Enlow v. State*, 46 S.W.3d 340, 346 (Tex. App.—Texarkana 2001, pet. ref'd) ("A co-defendant may adopt the objection of his fellow defendant, but that adoption must be reflected in the record."); *Martinez v. State*, 833 S.W.2d 188, 191 (Tex. App.—Dallas 1992, pet. ref'd) ("A defendant may adopt an objection made by a codefendant and, thus, preserve error when there is sufficient indication in the record of his intent to adopt the objection.").

*Woerner* does not support appellant's argument. Unlike the defendant in *Woerner*, appellant was silent during his co-defendant's closing argument. He did not speak up when the trial court sustained the State's objections and instructed the jury to disregard his co-defendant's argument. Appellant did not note his "exception" to the trial court's rulings in any way. Further, the co-defendant himself did not object or except to the trial court's ruling and instruction. *See Dean v. State*, 481 S.W.2d 903, 904 (Tex. Crim. App. 1972). Nor did the co-defendant's counsel explain what he would have argued further to the jury but for the trial court's rulings. *See id.* Thus, any alleged error was not preserved. This issue presents nothing for our review.

Accordingly, we overrule appellant's fifth issue.

## B.    Appellant's Closing Argument

In his sixth issue, appellant asserts that the trial court erred by sustaining the State's objection to his argument regarding the witness tampering charge and instructing the jury to disregard his argument.

Appellant's complaint focuses on the following exchange during closing argument:

> APPELLANT'S COUNSEL: Now, remember on the stand when Mr. Jones cross-examined her, at the end of his cross-examination yesterday you remember he asked her, we talking about Ms. Belfon, what do you know about the burglary of the motor vehicle that occurred back in June, 2007? She didn't know anything. She didn't know anything. She didn't know anything about that. She didn't know anything about any transaction, if there were any transactions. She didn't know.
>
> So you got to ask yourself a question, you bring her in here, you put

her on the witness stand, and she's supposed to be a prospective witness, okay, prospective witness, who knows zip about the offense. Who knows zip about the offense. But she's willing to go to any extreme, sacrifice anyone as long as she can maintain her criminal career and stay free, and that's the kind of person you've got to rely upon.

She didn't even meet the classification of a prospective witness.

THE STATE: Objection, your Honor, that's a misstatement of the law.

THE COURT: That's sustained.

THE STATE: Ask for an instruction for the jury to disregard.

THE COURT: The jury will disregard counsel's last statement.

APPELLANT'S COUNSEL: When you go back there and you look at prospective witness, ask yourself this, you're free to do this, because it's going to be your case, it's not going to be his case, not going to be the State case, not going to be the Defense case, it's going to be your case, ladies and gentlemen. You do what you think is right, as long as you follow the law.

You go back there, you just ask yourself when you're sitting there and you're thinking about this, you can ask yourself this, what did she know about that burglary? Because that's what they allege she was a prospective witness in.

THE STATE: Objection, your Honor, that's a misstatement of the law.

THE COURT: That's sustained.

THE STATE: Ask for an instruction for the jury to disregard.

THE COURT: The jury will disregard counsel's last statement.

APPELLANT'S COUNSEL: Read the charge and see if it isn't Cause No. 1138060, read it and see. And I read to you, that's the theft charge, ladies and gentlemen. That's the theft charge. That's the very charge he brought against Mr. Uyamadu, that's the theft charge, and that's the charge that she, Ms. Belfon, supposed to be a witness to. He can't have his cake and eat it too.

Appellant contends that, with regard to the offense of witness tampering, he "attempted to argue to the jury that Belfon was not a 'prospective witness' in the theft case because she knew nothing about the circumstances under which the computers were stolen or how they were acquired by the appellant."

Although the trial court has broad discretion in controlling the scope of closing argument, it may not prevent defense counsel from making a point essential to the

22

defense. *Lemos v. State*, 130 S.W.3d 888, 892 (Tex. App.—El Paso 2004, no pet.). Prohibiting counsel from making a jury argument the defendant is entitled to make constitutes a denial of the defendant's right to counsel. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). Such a denial occurs only when the trial court restricts defense counsel from doing something counsel had the legal right to do. *Jackson v. State*, 992 S.W.2d 469, 476 (Tex. Crim. App. 1999). Jury argument that misstates the law or contravenes the court's jury charge is improper. *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *see Peak v. State*, 57 S.W.3d 14, 18 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Appellant argues that whether his "counsel was legally correct depends on how this Court interprets the term 'prospective witness' in Point of Error Three. The appellant maintains that his attorney was correct to the extent he was conveying the idea that the statute was designed to protect witnesses for the State." Contending that the law on this issue was not settled, appellant argues he should have been permitted to "argue his point of view on an unsettled question of law."

Contrary to his assertion on appeal, appellant never "attempted to argue to the jury that Belfon was not a 'prospective witness' in the theft case because she knew nothing about" how appellant acquired the stolen Toughbook computers. Instead, appellant's argument focused solely on Belfon's lack of knowledge about the June 6 vehicle burglary. Appellant argued that Belfon did not "meet the classification of a prospective witness" because she had no knowledge about the June 6 vehicle burglary. Appellant invited the jury to consider what Belfon knew about the June 6 burglary "because that's what [the State] allege[d] she was a prospective witness in."

Further, nowhere in the above-outlined closing argument did appellant "convey[] the idea that the [witness tampering] statute was designed to protect witnesses for the State." Thus, contrary to his contention on appeal, appellant did not argue "an unsettled question of law" and the trial court did not err in disallowing his argument. Appellant's contentions on appeal are not supported by his argument in the trial court.

Accordingly, we overrule appellant's sixth issue.

## Conclusion

We affirm the trial court's judgment in cause number 1138060 and in cause number 1176507.


/s/    William J. Boyce
        Justice


Panel consists of Justices Brown, Boyce, and McCally.

Publish — Tex. R. App. P. 47.2(b).