

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00093-CR
### NO. 02-12-00094-CR

ARTIE DAVIS A/K/A ARTY DAVIS　　　　　　　　　　APPELLANT

V.

THE STATE OF TEXAS　　　　　　　　　　　　　　STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NOS. 1251836D, 1251838D

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Artie Davis a/k/a Arty Davis of theft and evading arrest or detention with a vehicle, for which he received concurrent sentences of six years' and five years' confinement, respectively.

In his first of two points, Davis argues that the evidence is insufficient to support his theft conviction based on lack of evidence to support the stolen

---

[1]See Tex. R. App. P. 47.4.

property's value.[2] To convict Davis of theft as charged in the indictment, the State had to prove that the total value of the stolen property had a value of $1,500 or more but less than $20,000. *See* Tex. Penal Code Ann. § 31.03(a), (b)(1), (e)(4)(A) (West 2011 & Supp. 2014). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

Somphet Peter Suphasawud testified that late one night in August 2011, he was awakened by a police officer's knock at his door to discover that the four wheels and tires of his used 2007 Cadillac Escalade SUV had been stolen while the vehicle was parked in his driveway. The tires and rims came with the vehicle when he purchased it. Sewell Cadillac faxed him an estimate of $7,075.48, including tax, as the replacement cost; the estimate was admitted as State's Exhibit 4 and showed that four wheel kits (before tax and without caps and sensors) would cost $4,857.48. Suphasawud testified that he did not know the

---

[2]Davis does not argue that the evidence is insufficient to support the remaining theft elements or his evading arrest conviction.

2

open market value of 2007 Cadillac Escalade wheels and that the only information he had as to the property's value was Sewell's replacement-cost estimate. Fort Worth Police Officer Travis Edelman testified that the wheels and tires in the photograph in State's Exhibit 1 were the ones that were recovered from Davis and returned to Suphasawud.

Davis argues that the evidence on value is insufficient because the State relied on the property's replacement value instead of its fair market value and that there was no testimony about the condition of the stolen property or its fair market value. However, "value" is the fair market value of the property at the time and place of the offense or, if the fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. Tex. Penal Code Ann. § 31.08(a) (West 2011). An owner may testify as to his opinion of his property's value. *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.); *see also Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that an owner may testify either in terms of purchase price or replacement cost). The jury was entitled to consider Suphasawud's testimony as to the property's replacement cost, particularly when the evidence also showed that the 2007 vehicle had been purchased as a used vehicle, that the vehicle was four years old, and that the tires and wheels had come with the purchase. The evidence also included Sewell's breakdown of the costs involved in replacing the wheels and tires and a photograph of the wheels and tires that Davis had stolen, which showed their

3

condition at the time of the theft. Because a rational trier of fact could have found beyond a reasonable doubt based on all of this evidence that the used property had a value of more than $1,500, we overrule Davis's first point.

In his second point, Davis complains that his exercise of his constitutional right against self-incrimination was violated when the trial court overruled his objection to an unsolicited comment on his post-arrest silence. Specifically, after defense counsel asked Officer Tom Geirling whether the accomplice had ever been apprehended, the officer replied that Davis would not tell the police who he was.

Assuming without deciding that the trial court erred by overruling Davis's objection to the comment, we must evaluate whether the trial court's ruling harmed Davis, taking into account "any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and considering the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). To do this, we must evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

4

During voir dire, the trial court told the venire that if Davis chose not to testify, it could not take that as a fact against him before asking if any prospective juror would hold him accountable if he did not testify. The prosecutor reiterated this and addressed the Fifth Amendment when talking about motive.[3] And Davis's counsel discussed the right to remain silent with the venire as it pertained to whether it would hold it against Davis if he did not testify.

In her opening statement, the prosecutor stated that the evidence would show that Davis was caught "red-handed" stealing four tires and wheels from Suphasawud's car and that Davis fled at a high rate of speed to try to evade arrest. Davis's counsel reserved the right to make an opening statement but did not make one.

Suphasawud, Officer Edelman, and Officer David Crim testified before Officer Geirling made the statement at issue here with regard to Davis's accomplice. Officer Crim testified that on August 24, 2011, at around 2 a.m., he was in an unmarked vehicle as part of the tracking unit conducting surveillance of Davis. He saw Davis drive a silver Impala and circle the block, "slowing down, stopping, looking around." After Davis left the neighborhood, the police found a

---

[3]The prosecutor stated,

> When somebody gets arrested, the police say you have the right to remain silent. Anything you say can and will be used against you. So I think, you know—I think a lot of us would like to take advantage of that law if we're ever in that situation, wouldn't we? Sure. Go ahead and protect yourself. So that's why we may not know what the motive is.

5

Cadillac Escalade with its front left tire and wheel missing and two bricks under the back two tires. Three houses to the east, they found the missing wheel. They left the wheel where they found it and continued to maintain surveillance.

At around 3:15 a.m., Officer Crim saw Davis return to the location in a red four-door vehicle. Davis pulled the red vehicle in front of Officer Crim's surveillance van and looked into the van's dark-tinted windows before he and his companion went to the Escalade with a jack and removed the remaining wheels and tires. Officer Crim said that he watched Davis and his accomplice remove the wheels and tires and load them into the red vehicle before they drove down the street and picked up the fourth tire and left the neighborhood. Officer Crim stayed at the scene and went with a uniformed sergeant to notify Suphasawud, whose testimony is set out above in our sufficiency analysis.

Officer Edelman testified that he was in the same surveillance group that night in another unmarked car. He followed Davis after the theft until a marked patrol car took over pursuit. When Davis was apprehended, Officer Edelman saw three wheels and tires in the back seat of Davis's vehicle and one wheel and tire in the trunk, and he testified that the wheels and tires were photographed and returned to Suphasawud.

Officer Geirling testified that he was dispatched in his marked patrol car at around 4 a.m. on August 24, 2011, to pursue the red vehicle. At the end of the chase, the driver, who Officer Geirling identified as Davis, abandoned the car and fled into a backyard. Officer Geirling followed on foot and tased Davis after Davis

6

kicked at him, which slowed Davis but did not stop him. It took two additional officers to take Davis into custody. Officer Geirling testified during his direct examination that the police were unable to identify the accomplice from his dashboard camera's videotape. Then he made the following response during cross-examination, which is at issue here:

> [Defense counsel]: That individual has never been apprehended; is that correct?
>
> [Officer Geirling]: Yes, sir. *Your client wouldn't tell us who he was.* [Emphasis added.]

During the cross-examination of each officer, Davis's counsel asked whether the accomplice was a confidential informant. Each officer denied knowing the accomplice's identity or that he was a confidential informant. Officer Edelman testified that confidential informants were not allowed to commit offenses, even at police direction. Davis's mother testified that between 2 a.m. and 3 a.m., Davis received a phone call and left by himself.

The trial court's guilt-innocence and punishment charges included the instruction that Davis had elected not to testify, that the jury could not refer to or allude to this during deliberations, and that it could not be taken into consideration for any purpose whatsoever as a circumstance against him.

During closing arguments during the guilt-innocence phase, the prosecutor addressed the elements of each offense without mentioning the accomplice or Davis's decision not to testify. Davis's counsel then responded that, among other

things, with all of the officers and resources at the scene,[4] the fact that the accomplice was not caught raised the possibility that the police were lying, that the accomplice was a confidential informant who the police had not tried to catch, and that the police had engineered the chase with the accomplice. The prosecutor rebutted Davis's counsel's argument by stating that his argument "was a load of you know what," that the evidence showed that Davis was guilty of both offenses, and that there was no evidence of a confidential informant's involvement in the case. The jury found Davis guilty of both offenses.

After Davis pleaded true to the enhancement allegations (two prior convictions for state jail felony theft of property $1,500 to $20,000), the trial court admitted the exhibits containing all of Davis's previous convictions pursuant to Davis's stipulations. In addition to his two previous state jail felony thefts, Davis also had two convictions for misdemeanor assault-bodily injury of a family member and a third state jail felony theft conviction. Davis's mother testified that Davis had two young children that he supported financially when he could, that Davis had been employed as a mechanic, and that Davis had started going to church. During closing arguments during the punishment phase, the prosecutor argued that Davis had already had a chance with community supervision for his previous theft offenses and deserved jail time, while Davis's attorney asked the jury for lenience.

---

[4]There were several officers—"[m]aybe 10"—in the area. A police helicopter with infrared capabilities and a bright spotlight was also called in.

Having evaluated the entire record, we conclude that a juror would probably place little to no weight on Officer Geirling's unsolicited comment, which was not emphasized by the State, making the trial court's decision to overrule Davis's objection harmless beyond a reasonable doubt.[5]  *See* Tex. R. App. P. 44.2(a); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).  We overrule Davis's second point.

Having overruled both of Davis's points, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 28, 2014

---

[5]That is, there is no "reasonable possibility" that the error might have contributed to the convictions or punishments based on its probable impact on the jury in light of the evidence and the way Davis's right to remain silent was reiterated throughout the trial, from voir dire to sentencing.  *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

9