

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00063-CR
_____

ANTHONY JOHN LIBERTO, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 13th District Court
Navarro County, Texas
Trial Court No. D34945

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

In a bench trial involving scant evidence on key elements of proof, Anthony John Liberto was convicted in Navarro County[1] of theft of property valued at between $1,500.00 and $20,000.00.[2] While there is no question that Liberto removed an air conditioning unit and compressor, a stove, and a dishwasher from a residence he had occupied but that had been purchased by Louis Edwin Hash, Jr., the question on appeal is whether legally sufficient evidence supports the trial court's necessary findings that the items of property Liberto removed from the premises were owned by Hash and that they were valued at or above $1,500.00. We affirm the judgment of the trial court because, based on legal precedent, we find that (1) legally sufficient evidence supports a finding that the air conditioning unit and compressor were fixtures and thus owned by Hash and (2) legally sufficient evidence supports a finding that the air conditioning unit and compressor were valued at or above $1,500.00.

Liberto's mother, Silvia Ellis, had previously lived in the residence in question until her poor health required her to be placed in a nursing home. The property was owned by James Ellis. Liberto became the sole occupant of the residence after Silvia left, but Ellis failed to pay the mortgage on the residence, and foreclosure ensued. Liberto received a notice of eviction on December 26, 2012, but ignored it.

---

[1]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]After Liberto's conviction, the trial court sentenced him to thirteen months' confinement in state jail and ordered him to pay $1,325.00 in restitution. *See* Act of May 9, 2011, 82d Leg., R.S., ch. 120, § 1, 2011 Tex. Gen. Laws 608, 609, *amended by* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 10, 2015 Tex. Gen. Laws 4209, 4214 (codified at TEX. PENAL CODE § 31.03).

On January 8, 2013, Hash purchased the residence "as is," sight unseen, at an online auction. Hash drove around the property and noticed that it was occupied. On January 10, Hash posted a notice to vacate on the front door and, armed with a video camera, had a discussion with Liberto about leaving the property. Later, Hash moved in, but discovered that the stove, dishwasher, HVAC air conditioning unit, and outdoor compressor for the air conditioning unit had been removed from the residence.

As a result of Hash's report to police about the missing items, local police found the dishwasher, air conditioning unit, and compressor at neighbor Paul Hooper's residence. Hooper testified that he purchased the dishwasher from Liberto for $300.00[3] and later discovered the air conditioning unit hidden in his storage shed. According to Hooper, Liberto had taken the items from the residence because "he felt like he had spent his money . . . to buy [the items] himself to put [them] in that home that wasn't his."

During a visit to the neighborhood, Mark Wyle testified that he witnessed Liberto loading items into a trailer. Because he had just purchased a new camera, Wyle photographed Liberto, documenting the removal of the items from the house with the assistance of his friend, James Elton Johnson.

At trial, Liberto took the position that all of the items that he took from the residence belonged to him. He testified that he paid for the dishwasher and the stove, which were not attached to the residence, and that he had also paid for the air conditioning unit and compressor. He introduced a receipt demonstrating that "Discount Svc Maint." paid $1,183.84 for the

---

[3]During cross-examination, Hooper testified that he paid $300.00 for the dishwasher and a washer and dryer.

compressor and HVAC air conditioning unit, which was shipped to the residence in 2007. Liberto further testified that he had an "International Mobile Air Conditioning License" and that "Discount Svc Maint." was his company.

Liberto testified that the air conditioner was not attached to the residence or the air ducts. Instead, he testified that the outdoor compressor was still bolted to the shipping pallet and that the air conditioning unit was located in the middle of the living room. Liberto testified that, to get the air conditioner to work, he simply plugged it into an electrical outlet. Testifying on Liberto's behalf, Johnson said that he visited Liberto in the residence many times, that the air conditioning unit was in the middle of the living room, and that it was not hooked up to the duct work. Johnson also said that the stove had not been working for months and that they sold it to the scrap yard for $6.00. He further testified that they did not cause damage to the residence in removing the dishwasher or stove.

Liberto's and Johnson's parts of the testimony were inconsistent with Hash's testimony. Hash testified that, although he did not go inside the residence on January 10, he walked outside and found the outdoor compressor for the air conditioning unit. According to Hash, Liberto "said . . . he had it replaced. In other words, inside and out" and that he had recently installed the air conditioner himself. Hash testified, "I remember asking if the AC worked all right. And he said it worked good." The video corroborated Hash's testimony. On the video recording, the compressor appears to be hooked up and not on a shipping container. The video shows that Liberto told Hash (1) that he recently installed the air conditioner after paying $1,600.00 for it, (2) that he installed the "H coils" himself, (3) that he "put in the air handler . . . with electric," and (4) that

4

"[t]he air conditioner work[ed] good." When Liberto was interviewed by officer Michael Perry, he said in a recorded statement, "I hooked up my air conditioning unit for [Silvia and James]."

When the sufficiency of the evidence is challenged, we are to use the standard of review stated in *Jackson v. Virginia*, that is, to ask not what we would decide based on the record before us, but whether, when viewing the evidence in the light most favorable to the prosecution, any rational fact-finder could have found as this fact-finder did, that the elements of the charged crime have been proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Mechell v. State*, 374 S.W.3d 454, 456–57 (Tex. App.—Waco 2011, pet. ref'd); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The province of the fact-finder is to judge witness credibility, and it may believe certain witnesses and disbelieve others. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Mechell*, 374 S.W.3d at 456–57.

We review the sufficiency of the evidence to prove the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Jackson v. State*, 399 S.W.3d 285, 290 (Tex. App.—Waco 2013, no pet.). The State alleged that Liberto, on or about January 11, 2013, unlawfully appropriated "AN HVAC UNIT AND COMPRESSOR, A DISHWASHER AND A STOVE, of the value of $1500 or more but less than $20,000 from Louis Edwin Hash, Jr., the owner thereof," without his effective consent and with the intent to deprive Hash of the property.

We now address each of Liberto's two evidence-based arguments that the property belonged to him and that the State failed to prove the value of the property.

5

*(1)    Legally Sufficient Evidence Supports a Finding that the Air Conditioning Unit and Compressor Were Fixtures and thus Owned by Hash*

Liberto first argues that the dishwasher, stove, air conditioning unit, and compressor were his personal property because they were not affixed to the realty.  However, Hash's testimony, the videotape, and the audio recording of Perry's interview all contained evidence that Liberto said he had installed the air conditioner in the residence and that it "worked good."  Thus, the evidence was legally sufficient for the trial court to conclude that, at a minimum, the air conditioning unit and compressor were attached to the residence as fixtures when Hash purchased it January 8 and that these items belonged to Hash.[4]

While the evidence is conflicting and we might not make the same findings as the trial court, our role is to determine whether legally sufficient evidence supports the finding that Hash, not Liberto, owned the air conditioner and compressor.  The video evidence and the reported utterances from Liberto's mouth constitute evidence that, if believed, establish that the air conditioner and compressor had been installed as fixtures to the residence and that, thus, title to those items passed to Hash when he purchased the residence.

*(2)    Legally Sufficient Evidence Supports a Finding that the Air Conditioning Unit and Compressor Were Valued at or above $1,500.00*

Liberto also questions the proof of the fair market value of these items.  Under Section 31.08 of the Texas Penal Code, value is:  "(1) the fair market value of the property . . . at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft."  TEX. PENAL CODE ANN.

---

[4]For purposes of this analysis, we need only focus on the air conditioning unit and compressor.

§ 31.08(a) (West Supp. 2016). At trial, Hash testified that he did not attempt to reuse the recovered items, but decided to replace them instead. Hash testified that it cost $7,000.00 to replace the air conditioning unit.[5] Detective Mark Nanny, without objection, testified that he did not research the value of the air conditioning unit, but that the value for the outdoor compressor alone was "[$]1490 to almost $3,600 depending on the size."

Liberto argues that Hash's and Nanny's testimony established replacement value of the outdoor compressor if purchased as new, not fair market value of the property, which should have taken into account the age of the items. He further contends that, because the State did not introduce evidence that the fair market value of the air conditioning unit and compressor could not be ascertained, the trial court could not consider replacement value.

"Fair market value" has been held to mean the amount the property would sell for in cash, giving a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991). The Texas Court of Criminal Appeals has written,

> When an owner testifies, the presumption must be . . . that the owner is testifying to an estimation of the fair market value. Certainly the owner may reasonably be understood to be testifying as to the fair market value of the property either in terms of the purchase price or the cost to him of replacing the stolen property.

*Sullivan v. State*, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986). In other words, for purposes of calculating fair market value of stolen property in a theft prosecution, "[a]n owner may testify either in terms of purchase price or replacement cost, and is presumed to be testifying to an estimation of fair market value." *Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex. App.—Houston

---

[5]Hash also testified that it cost $1,200.00 to replace the stove and $350.00 to replace the dishwasher.

[14th Dist.] 2011, pet. ref'd); *Valdez v. State*, 116 S.W.3d 94, 98 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see Drilling v. State*, No. 10-01-00343-CR, 2005 WL 428850, at *3 (Tex. App.—Waco Feb. 23, 2005, no pet.) (not designated for publication).[6] Because Liberto did not object to Hash's or Nanny's testimony regarding value, the trial court was free to consider that testimony in making its determination of whether the "value" of the stolen items, as that term is defined by Section 31.08, was $1,500.00 or more. *See Moff v. State*, 131 S.W.3d 485, 492 (Tex. Crim. App. 2004).

"If the appellant wishes to rebut the owner's opinion evidence he must . . . offer controverting evidence as to the value of the property." *Sullivan*, 701 S.W.2d at 909. Liberto presented such controverting evidence. Pointing to the receipt that he introduced into evidence showing that "Discount Svc Maint." paid $1,183.84 for the air conditioning unit and compressor in 2007, Liberto argues that the fair market value of these items in 2013 could not have been more than $1,183.84. The serial numbers from the recovered air conditioning unit and compressor matched the serial numbers on the invoice introduced into evidence by Liberto. Although Liberto testified that he paid fair market value for the items, the items were purchased by Liberto's business, and, in light of Hash and Nanny's testimony, the trial court could have disbelieved Liberto or concluded that Liberto did not pay the full retail fair market price.[7]

The question is whether, in light of all of the evidence, which we view in the light most favorable to the conviction, the trial court could have found beyond a reasonable doubt that the

---

[6]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[7]On video, Liberto told Hash that he had paid $1,600.00 for the air conditioning unit and compressor.

value of the air conditioning unit and compressor was $1,500.00 or more. *See id.* Based on the evidence at trial, we answer the question in the affirmative. Accordingly, we conclude that legally sufficient evidence supported Liberto's conviction.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     October 26, 2016
Date Decided:       November 29, 2016

Do Not Publish