

# NUMBER 13-13-00062-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

JUAN JIMENEZ,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

---

### On appeal from the 214th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Benavides
### Memorandum Opinion by Justice Garza

Appellant, Juan Jimenez, was convicted of tampering with a witness, a third-degree felony, and was sentenced to two years' imprisonment.  *See* TEX. PENAL CODE

ANN. § 36.05 (West, Westlaw through 2013 3d C.S.). On appeal, he argues that the evidence was insufficient to support the verdict. We affirm.

## I. BACKGROUND

On May 17, 2012, Jimenez was indicted by a Nueces County grand jury on two counts of felony family violence assault. *See id.* § 22.01 (West, Westlaw through 2013 3d C.S.). Count one alleged that he caused bodily injury to Julina Thompson, his girlfriend at the time, by "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood. . . ." *See id.* § 22.01(b)(2)(B). Count two alleged that he pushed and/or bit Thompson and that he had previously been convicted of an offense involving family violence. *See id.* § 22.01(b)(2)(A).

On June 6, 2012, Jimenez was arraigned and bond conditions were set. On July 9, 2012, trial was reset due to the nonappearance of Thompson, a key witness. On November 2, 2012, Jimenez was re-indicted on the two counts of felony family violence assault and a third count of tampering with a witness. *See id.* § 36.05. The tampering count alleged that Jimenez

> on or about July 9, 2012 in Nueces County, Texas, did then and there coerce Julina Thompson who was then and there a witness or prospective witness in an official proceeding, to wit, Jury Trial of State of Texas vs. Juan Jimenez, by calling Julina Thompson and telling her to leave, with intent to influence the said Julina Thompson to absent herself from said official proceeding to which she had been legally summoned.

The case proceeded to trial on December 11, 2012. Thompson testified that she is twenty-seven years old and has four children; Jimenez is the father of the youngest child. On the evening of May 1, 2012, while Thompson was four months pregnant and living in a Corpus Christi apartment with Jimenez, she called the police. When the prosecutor asked why she called the police, Thompson pleaded her Fifth Amendment

2

right against self-incrimination. *See* U.S. CONST. amend. V. Outside the presence of the jury, the prosecutor agreed that "the State is not going to proceed forward with any charges against [Thompson] in regards to perjury at this point" and the trial court granted absolute immunity to Thompson. Thompson then testified in front of the jury that she called the police on May 1, 2012 because she had gotten into an argument with Jimenez. She acknowledged that she gave a statement to police setting forth that Jimenez had pushed, bitten, choked, and grabbed her during the argument.[1] According to Thompson's police statement, the argument started as a result of her being "out late" on the night of April 30.

At trial, Thompson recanted the statement she made to police. She testified that the argument never became physical.[2] When the prosecutor asked Thompson why she called the police on May 1, 2012, she testified:

> Because in the argument, we—we said some really hateful things to each other. Um, over the past years, um, things haven't gone too well. I was tired of him being able to do what he wanted to do, but it wasn't okay for me to do what I wanted to do. So, um, I—I took it upon myself to go do what I wanted to do and when I came home it was not okay. It was not okay with him. All of my things were out and I didn't feel that should be right, because—because I don't do that to him. I don't put his stuff out when he— he's gone for a couple of days and doesn't show up. I mean, that was the whole point of the argument, I mean. I—I was fed up. I was tired of it. . . . We were pretty heated in the argument. I mean, he never laid his hands on me. He never touched me. He—we just argued. That's all it was, is a really big argument. I got in his face a lot. All he wanted to do was just walk away and wanted me to leave. That's all.

---

[1] The police statement, though admitted as evidence at trial, does not appear in the record before this Court. The parties do not dispute the contents of the statement.

[2] Thompson conceded that pictures taken on May 1, 2012 showing scratch marks on her neck and hand accurately reflect how she appeared that day. She initially told police that the marks were the result of Jimenez's assault, but at trial, she testified that the marks actually resulted from an unrelated altercation that occurred the night before.

The prosecutor then asked Thompson about the events of July 9, 2012. Thompson acknowledged that she knew the case was originally set for trial that day; that she was living with Jimenez at the time; that she knew she was under subpoena to appear that day; and that she did not in fact appear. The following colloquy ensued:

Q. And at some point during the morning you received a telephone call, correct?

A. Yes, ma'am.

Q. And the Defendant told you that you needed to get out of the house, correct?

A. Yes, ma'am.

Q. Because we had issued what was called a writ, which was a warrant for your arrest because you had failed to appear [in] court, correct?

A. He didn't explain to me all that, but, yes.

Q. You knew the police were coming to look for you, correct?

A. Yes.

Q. And he told you to get out of the house because the police were on their way, correct?

A. No. He asked me what I was still doing there at the house, that I needed to get out. He never said anything about nobody—that I can recall, he never said anything about anybody coming. He said, "What are you still doing there at the house?"

Q. "Get out of the house."

A. Yep. "You need to get up and go."

Q. And that was because you didn't—he didn't want you here—

A. No, that's not—

Q. —on the—

A. No.

4

Q. Well, why aren't you here on the 9th?

A. Because I wasn't going to show up.

Q. You were under subpoena.

A. Yes, ma'am.

Q. So you knew you had to be here, correct?

A. Yes, ma'am.

Q. And you knew if you didn't follow that subpoena, there would be consequences, correct?

A. Yes, ma'am.

Q. And the only way that—if you're sitting at home, the Defendant's gone to court and he calls you at some point in the morning telling you to get out, correct?

A. Yes, ma'am.

Q. And at that point, you did get out, correct?

A. Yes.

Q. You actually hid from the police, correct?

A. Yes, ma'am.

Q. And his family actually tried to hide you, correct?

A. Yes, ma'am.

. . . .

Q. [W]hen the Defendant called you and told you to get out, you left, right, because he told you to, correct?

A. Yes, ma'am.

Q. And if he had called you, instead of saying, "Just get out," if he had told you "Leave the house," you would have done that, correct?

5

A.     Yes, ma'am.

Q.     Because you knew that there was a court proceeding going on and you weren't at it.

A.     Yes, ma'am.

On cross-examination, Thompson testified that it was her sole decision not to comply with the subpoena and that Jimenez did not coerce her not to appear. On re-direct-examination, Thompson acknowledged that Jimenez provides financial support for her youngest child. She agreed with the prosecutor that she was "upset with [Jimenez] because he was going to throw [her] out of the apartment" and that she "concocted this big story" because she was angry at him. She agreed with defense counsel on re-cross-examination that she called the police "to teach [Jimenez] a lesson."[3]

The jury acquitted Jimenez of both family violence assault charges, but found him guilty of tampering with a witness and assessed punishment of two years' imprisonment. This appeal followed.

## II. DISCUSSION

By his sole issue on appeal, Jimenez contends that the evidence supporting his conviction is insufficient "because the cumulative facts of the testimony given by Thompson contradict the jury's verdict." He argues that that he "did not solicit Thompson to elude trial in any form or fashion."

## A.     Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the

---

[3] In its statement of facts, Jimenez's appellate brief states that "[d]efense counsel called Jimenez to testify in [his] own defense" and that "Jimenez testified that his dad and Thompson had an argument, not him." In fact, the record shows that Jimenez was not called to testify. Jimenez's fifteen-year-old son, however, was called to testify and he did indeed state that his father was involved in an argument with Thompson.

6

evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that Jimenez is guilty of tampering, as alleged in the indictment, if: (1) Thompson was "a witness or a prospective witness in an official proceeding"; and (2) Jimenez, with intent to influence Thompson, coerced her "to absent [her]self from an official proceeding to which [she had] been legally summoned." TEX. PENAL CODE ANN. § 36.05(a)(4).[4]

"Coercion" means:

_____

[4] There appears to be no dispute that Thompson was "a witness or prospective witness in an official proceeding" or that she was "legally summoned" to testify at trial on July 9, 2012. *See* TEX. PENAL CODE ANN. § 36.05(a), (a)(4) (West, Westlaw through 2013 3d C.S.).

a threat, however communicated:

(A)     to commit an offense;

(B)     to inflict bodily injury in the future on the person threatened or another;

(C)     to accuse a person of any offense;

(D)     to expose a person to hatred, contempt, or ridicule;

(E)     to harm the credit or business repute of any person; or

(F)     to take or withhold action as a public servant, or to cause a public servant to take or withhold action.

*Id.* § 1.07(a)(9) (West, Westlaw through 2013 3d C.S.).[5]

Circumstantial evidence is as probative as direct evidence in establishing guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13.

**B.     Analysis**

Jimenez's argument on appeal, exclusive of record excerpts and general references to applicable case law, consists entirely of the following:

> Appellant argues that no evidence was presented to show any of his actions caused Thompson to withhold any information, to elude testifying for the State or remain absent from his criminal trial proceeding. . . . Thompson eluded police on of [sic] her own free will without any prompting by Jimenez. The actions of Jimenez['s] family should not be attributed to him since he was in custody. . . . There was no evidence presented of solicitation by Jimenez, a key element of the crime. The phone call by Jimenez was completely unrelated to the trial proceeding. Therefore, the facts cumulatively are not sufficient to sustain his conviction o[f] tampering with a witness, Thompson.

---

[5] The tampering statute provides that "a person is considered to coerce a witness or prospective witness if the person commits an act of family violence as defined by Section 71.004, Family Code, that is perpetrated, in part, with the intent to cause the witness's or prospective witness's unavailability or failure to comply . . . ." *Id.* § 36.05(e-3). This provision is not applicable here, however, because there was no allegation or evidence that Jimenez committed an act of family violence with the intent to cause Thompson to disobey her subpoena.

The State's argument on appeal, again exclusive of citations and record references, consists entirely of the following:

> According to Appellant, the evidence is insufficient because "no evidence was presented to show any of his actions caused Thompson to withhold any information, to elude testifying for the State or remain absent from his criminal trial proceeding." However, according to [section] 36.05, a defendant commits the offense if he engages in the requisite conduct with the intent to influence the witness. Whether the defendant is successful or unsuccessful is irrelevant. Appellant is essentially contending that the evidence is insufficient because the State failed to prove an element of the offense that does not exist. Appellant's argument also ignores Thompson's testimony. Accordingly, Appellant's issue should be overruled.

We agree with the State that it was under no burden at trial to prove that Jimenez's phone call caused Thompson to fail to obey her subpoena. *See* TEX. PENAL CODE ANN. § 36.05(a); *Uyamadu v. State*, 359 S.W.3d 753, 764 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("[N]othing in section 36.05 requires a prospective witness to actually testify. A person commits the offense of tampering with a witness if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a prospective witness in an official proceeding to testify falsely."); *Navarro v. State*, 810 S.W.2d 432, 437 (Tex. App.—San Antonio 1991, pet. ref'd) ("The alleged offense of tampering with a witness was complete when the appellant offered and conferred and agreed to confer a benefit (money) to the witness in a manner calculated to cause false testimony."). Therefore, insofar as Jimenez contends his conviction should be reversed because there was no evidence that his phone call caused Thompson to fail to appear, we reject that argument.

Jimenez also argues that there was no evidence of "solicitation." Solicitation— which is generally defined as "[t]he act or an instance of requesting or seeking to obtain

9

something," BLACK'S LAW DICTIONARY 1520 (9th ed.)—is also not an element of the charged offense. *See* TEX. PENAL CODE ANN. § 36.05(a).

Even if we were to construe[6] this argument as urging no evidence of *coercion*—which *is* an element of the charged offense, *see id.*, and which is precisely defined by statute, *see id.* § 1.07(9)(D)—such an argument would not be meritorious. Thompson testified that Jimenez called her on the same day she was subpoenaed to testify at his criminal trial and told her to get out of the house. Thompson testified that, after the phone call, she left the house and hid from the police. A juror could have reasonably concluded from this testimony that Jimenez's phone call was an implicit threat "to expose [Thompson] to hatred, contempt, or ridicule."[7] *See id.* (defining "coercion"); *see also Landers v. State*, No. 10-11-00408-CR, 2012 WL 3799212, at *3 (Tex. App.—Waco Aug. 30, 2012) (mem. op.) (noting that the statutory definition of "coercion" requires an "actual or implicit threat"), *rev'd on other grounds*, 402 S.W.3d 252 (Tex. Crim. App. 2013). In particular, the jury could have reasonably found that, by telling Thompson to leave the house under those circumstances, Jimenez implied to Thompson that if she did not do as he ordered, she would be exposed to contempt of court for refusing to obey a subpoena. *See* TEX. CODE CRIM. PROC. ANN. art. 24.05 (West, Westlaw through 2013 3d C.S.) ("If a witness refuses to obey a subpoena, he may be fined at the discretion of the court, as

---

[6] We note that least one appellate court has elided the distinction between "solicitation" and "coercion" in the context of subsection (a) of the tampering statute. *See Nzewi v. State*, 359 S.W.3d 829, 833 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (noting, inconsistent with the statute, that "a person commits witness tampering by *soliciting* a witness or prospective witness in an official proceeding" (emphasis added)).

[7] This is true even though the prosecutor, in her closing argument, incorrectly stated that "coercion doesn't mean he has to threaten her or that she has to get a benefit." In fact, coercion, as defined by the penal code, requires a threat. *See* TEX. PENAL CODE ANN. § 1.07(9) (West, Westlaw through 2013 3d C.S.).

follows:  In a felony case, not exceeding five hundred dollars . . . ."); *see also id.* art. 24.011(b) (West, Westlaw through 2013 3d C.S.) (referring to "penalties for contempt provided by this chapter").  The jury could also have reasonably inferred from this evidence that Jimenez harbored an intent to influence Thompson.  *See* TEX. PENAL CODE ANN. § 36.05(a).  To the extent that there was conflicting evidence regarding any of these elements, the jury was entitled to disbelieve it.  *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.").

We conclude that the evidence was sufficient to support the conviction.  Therefore, we overrule Jimenez's issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of July, 2014.

11