COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MARGARET ANNE HARDISON, | § | |
| | | No. 08-14-00115-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 97th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Montague County, Texas |
| Appellee. | § | |
| | | (TC# 2013-0082M-CR) |
| | § | |

# **O P I N I O N**

Appellant Margaret Anne Hardison was charged with theft of property having a value of $100,000 to $200,000, which at the time was a second-degree felony.[1]  Appellant waived jury trial and pleaded not guilty.   The trial court found Appellant guilty and sentenced her to ten years' confinement, but suspended the sentence and placed her on community supervision for ten years. On appeal, Appellant argues the evidence is insufficient to support her conviction.   We affirm.[2]

## **BACKGROUND**

Appellant worked as contract labor for Jimmi Barclay, whose business, Barclay Leasing

---

[1]  Act of May 21, 2011, 82nd Leg., R.S., ch. 120, 2011 Tex. Gen. Laws 608, 609 (amended 2015) (current version at TEX. PENAL CODE ANN. § 31.03(e)(6) (West Supp. 2015)).   In 2015, the legislature amended the range of values for the offense of second-degree felony theft to $150,000 or more but less than $300,000.   *See* TEX. PENAL CODE ANN. § 31.03(e)(6).

[2]  This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

Service, provided landman services to various companies. Those services included locating mineral owners by running the title to properties to determine the current owners, and then contacting the owners and securing mineral leases on the property. Barclay had entered into a partnership with two other individuals to create a single, combined landman database or abstract plant covering Montague, Archer, and Jack Counties. Creation of this landman database entailed (i) copying and digitizing all or most of the probate and deed records in the three counties, (ii) compiling those records into one electronic database, and (iii) overlaying that database with metadata so that the records could be searched. This metadata included the pre-existing county indices, which are based on names and dates of sale or demise, as well as newly-created indices based on survey and abstract numbers to make searching the database more efficient and useful for landman purposes.

Appellant began working on the database in May 2011, building indices for Archer and Montague counties. Appellant had permission during this time to take home jump drives containing the database to work on them. Appellant quit working for Barclay in July 2012. In May 2013, Barclay learned that Appellant apparently had retained a jump drive and other external drives containing the landman database, and that she had attempted more than once to sell the database to third parties. Drives containing the landman database were found in a subsequent search of Appellant's home. During the search, Hardison admitted that she had attempted to sell the database on three separate occasions to three different persons, but had failed in her attempts. Hardison later texted Barclay that she was sorry and that she deserved punishment, whatever that may be.

**DISCUSSION**

2

In a single issue, Appellant contends the evidence was insufficient to show: (1) she appropriated the property without the effective consent of the owners; (2) she deprived the owners of the use or enjoyment of their property; and (3) that the market value of the property was more than $100,000 but less than $200,000, as alleged in the indictment.

**Standard of Review**

We review sufficiency complaints under the legal sufficiency standard enunciated in *Jackson v. Virginia. Fernandez v. State*, 479 S.W.3d 835, 837 (Tex.Crim.App. 2016); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We examine the evidence in the light most favorable to the verdict and ask whether any rational fact finder could have found the elements of the charged offense beyond a reasonable doubt. *Fernandez*, 479 S.W.3d at 837-38; *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. If a rational fact finder could have so found, we will not disturb the verdict on appeal. *Fernandez*, 479 S.W.3d at 838; *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (upholding conviction where evidence was legally sufficient); *Temple v. State,* 390 S.W.3d 341, 363 (Tex.Crim.App. 2013) (affirming judgment where evidence was legally sufficient to support a conviction).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014); *Carrizales v. State,* 414 S.W.3d 737, 742 (Tex.Crim.App. 2013) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). The jury is the sole judge of

3

credibility and weight to be attached to the testimony of witnesses. *Dobbs*, 434 S.W.3d at 170; *see Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; s*ee Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *see also Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (observing that it is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper,* 214 S.W.3d at 13.

## Analysis

Appellant first contends the State failed to present evidence sufficient to support her conviction for theft because it failed to establish that she appropriated the database without the owners' effective consent. Appellant argues the State failed to prove lack of consent, because Barclay initially consented to Appellant's possession of the database for the purpose of performing the contract work and never revoked that consent by requesting that she return the database when her services were completed. We disagree.

A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2015); *see Taylor v. State*, 450 S.W.3d 528, 535 (Tex.Crim.App. 2014). The indictment here modified the statutory elements of theft by alleging that Appellant unlawfully appropriated the database "by acquiring or

4

otherwise exercising control over" it and did so "without the effective consent of the owners[.]" [3]

As alleged in the indictment, "appropriate" in this case means "to acquire or otherwise exercise control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(B) (West Supp. 2015); *see Taylor*, 450 S.W.3d at 535. Appropriation is "unlawful" if it is, *inter alia*, without the owner's effective consent. TEX. PENAL CODE ANN. § 31.03(b)(1); *Fernandez*, 479 S.W.3d at 838; *Taylor*, 450 S.W.3d at 535. "Consent" means assent in fact, whether express or apparent. TEX. PENAL CODE ANN. § 1.07(a)(11) (West Supp. 2015); *Fernandez*, 479 S.W.3d at 838.

Lack of effective consent may be established by direct or circumstantial evidence. *See Taylor v. State*, 508 S.W.2d 393, 397 (Tex.Crim.App. 1974) (overruling cases holding that proof of consent may only be shown through direct evidence); *Martinez v. State*, No. 02-14-00423-CR, 2015 WL 1967442, at *3 (Tex.App. – Fort Worth Apr. 30, 2015, no pet.) ("Lack of consent in theft cases may be proven by direct evidence or circumstantial evidence."); *Silva v. State*, No. 08-04-00366-CR, 2006 WL 2080075, at *2 (Tex.App. – El Paso July 27, 2006, no pet.) ("The State may rely on both direct and circumstantial evidence in proving the owner's lack of consent.").

The record in the present case contains circumstantial evidence from which the trial court could have reasonably inferred that the initial consent to possession had been revoked when Appellant quit working for Barclay in July 2012. Barclay testified that she and her partners were

---

[3] We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically-correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex.Crim.App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal*, 286 S.W.3d at 327. The law, as authorized by the indictment, means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

the owners of all or some portions of the database through their partnership. Although access to the database was initially given to Appellant as a subcontractor, Barclay testified that Appellant should not have had access to the database after the conclusion of her contract. Barclay further testified that she had not granted Appellant the authority to copy information from the database or hard drives. There is no question that Appellant exercised control of the database. Appellant emailed portions of the database to one prospective buyer and offered to permit him to examine documents "on a large jump drive of all counties."

Further, Appellant's work with Barclay was governed by a master land services contract, which Appellant signed. That contract expressly provided that all information provided by the company was proprietary and the exclusive property of the company, and that it "shall be delivered to Company upon completion of services" under the contract. Thus, the document governing Appellant's working relationship with Barclay placed an affirmative duty on Appellant to return the database to Barclay when she quit working in July 2012.

Moreover, in the audio recording conducted during the execution of the search warrant, Appellant expressly acknowledged that the records were obtained from a hard drive that Barclay had permitted her to use, that the information belonged to Barclay and her partners, and that Appellant "knew better than to do this." Viewing the evidence in the light most favorable to the verdict, we conclude that the cumulative force of all these incriminating circumstances was sufficient to support the trial court's reasonable inference and finding that Appellant had unlawfully appropriated the property without the effective consent of the owners.

Appellant next contends the State failed to prove deprivation. When as here the indictment does not specify a particular means of deprivation, there are three different ways in

6

which one can deprive a person of his property under the theft statute. TEX. PENAL CODE ANN. § 31.01(2) (West Supp. 2015). "Deprive" can mean: (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner; (B) to restore property only upon payment of reward or other compensation; or (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely. *Id.*

Appellant's precise argument is unclear in some respects. But, Appellant clearly and correctly points out that subsection (B) does not apply because there is no evidence that Appellant would restore the database only upon payment of a reward or other compensation. The rest of Appellant's argument appears to focus solely on subsection (A), under which deprive can mean to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner. *Id.* at § 31.01(2)(A); *Taylor*, 450 S.W.3d at 535. In this regard, Appellant points out that Barclay had other copies of the database at the office, and thus no use or "enjoyment of the property" was lost by her actions. Appellant also points out that although she sought to sell the database, she was unsuccessful, and thus no value of the property was lost.

The weakness of these arguments arises from two bases. First, the State was not required to show Appellant actually deprived the owners of the database, but only that she unlawfully appropriated the database "with *intent to deprive* the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (emphasis added). And, to prove the element of "intent to deprive" for theft, the State need not prove that an actual deprivation occurred. *See Rowland v. State,* 744 S.W.2d 610, 612 (Tex.Crim.App. 1988). Deprivation is simply not an element of the offense. *Id.* What is

7

relevant is the defendant's intent at the time of the taking, rather than the actual length of deprivation. *See id.; see also Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Crim.App. 1981) (the element which must be proved is not a deprivation, but the defendant's intent to deprive at the time of the taking). Such intent may be inferred from the words, actions, or conduct of the accused. *See McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App. 1989).

Second, "deprive" can also mean to dispose of property in a manner that makes recovery of the property by the owner unlikely. TEX. PENAL CODE ANN. § 31.01(2)(C). Under this means, the State was not required to prove a loss of value or loss of use or enjoyment of the property. And, again, the State need only prove Appellant had the intent at the time of taking to dispose of the property in a manner that made recovery unlikely. We conclude there is sufficient evidence of an intent to deprive in this regard.

Barclay testified that although Appellant had been permitted to take home the hard drives containing the database for the purpose of performing her duties under the subcontract with Barclay, Appellant was to "bring it back," and should not have been in possession of the database or hard drives containing the database after her contract had concluded. Barclay's testimony in this regard was supported by the clear language of the master land service contract that Appellant had the affirmative duty to return the database when she quit her job in July 2012. Appellant did not return the database and admittedly attempted to sell the database in her possession to three persons. The fact that she failed to complete the sales does not negate her intent to make the sales. Viewing the evidence in a light most favorable to the verdict, we conclude the evidence is legally sufficient to show and to permit the trial court to reasonably find that Appellant intended to deprive the owners of their landman database by disposing of the property in a manner that made recovery

8

unlikely.

Finally, Appellant contends the evidence was insufficient to show the database had a value of $100,000 but less than $200,000, as alleged in the indictment. Under Texas law, the value of the property taken is an essential element of the offense. *See Simmons v. State*, 109 S.W.3d 469, 478-79 (Tex.Crim.App. 2003). The value of the property unlawfully appropriated is an aggravating element. *See* TEX. PENAL CODE ANN. § 31.03(e); *Calton v. State*, 176 S.W.3d 231, 235 (Tex.Crim.App. 2005).

The Penal Code defines value as the fair market value at the time and place of the offense or, if that cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. TEX. PENAL CODE ANN.§ 31.08(a) (West Supp. 2015). Fair market value is the amount the property would sell for in cash, given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex.Crim.App. 1991). Value may be proved in a variety of ways. *Id.* One method of proving value is through the testimony of the property owner. *Id*.; *see Sullivan v. State*, 701 S.W.2d 905, 908 (Tex.Crim.App. 1986) ("It has long been the rule in this State that the owner of property is competent to testify as to the value of his own property."). When an owner testifies, the presumption is that the owner is testifying to an estimation of the fair market value. *Id*.; *Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex.App. – Houston [14th Dist.] 2011, pet. ref'd). The owner may testify as to the fair market value of the property either in terms of purchase price or the cost to him of replacing the stolen property. *Jones v. State*, 814 S.W.2d 801, 803 (Tex.App. – Houston [14th Dist.] 1991, no pet.); *Uyamadu*, 359 S.W.3d at 759.

Appellant contends that the only evidence of market value at the time of the offense was from witnesses Kubik and Yowell, and that Kubik testified that Appellant offered to sell him the

9

database for only $12,000, and that Yowell testified only that he didn't believe the database was even worth the $5,000 to $12,000 selling price asked by Appellant. Appellant also asserts that Barclay did not testify as to market value but only as to the cost to produce the database and the monetary harm the partners would suffer if Appellant had managed to sell the database, and that in any event, the cost to replace the database was minimal since there were multiple copies of the database. Appellant also contends that to the extent Barclay testified as to market value it went only to the finished product after completion and not to the uncompleted form of the database Appellant attempted to sell. We disagree with all these assertions.

Barclay did testify concerning the cost to create the database, which was $144,379.81. This included the cost of paying 19 people who worked over a period of more than seven months to create the database ($129,046.33), and the expenditures to purchase and rent scanners and to purchase the county records ($15,333.48). She also testified that if Appellant had completed a sale of the database, the entire database would have been devalued down to $15,000—$5,000 for each of the three counties. If this had been the only evidence of market value, we might agree with Appellant that the evidence was insufficient to prove the alleged value.

But, Barclay also testified as to the market value of the database in its incomplete state without the indices completed. She testified the Archer County records would have sold at a fair market value of probably $200,000 because it was incomplete, the Jack County records for probably $50,000 to $60,000 due to their incomplete nature, and the Montague County records for maybe $500,000.

Viewed in the light most favorable to the verdict, this evidence was sufficient to show that the value of the appropriated property was more than $100,000 but less than $200,000, as alleged.

10

Because the evidence is sufficient to support Appellant's conviction for second-degree felony theft, as charged, her sole issue on appeal is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

April 29, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)