

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00369-CR

ROGER FOUNTAIN                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2012-0345-E

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Roger Fountain appeals his conviction for tampering with a witness. The trial court found Fountain guilty following a bench trial and, after a punishment hearing, sentenced him to two years' confinement in the state-jail division of the Texas Department of Corrections, probated for two years, and

---

[1]*See* Tex. R. App. P. 47.4.

imposed 180 days' confinement in the Denton County jail as a condition of probation. In two issues, Fountain argues that the trial court erred by failing to grant his motion for directed verdict at the conclusion of the State's case-in-chief. We will affirm.

## II. FACTUAL BACKGROUND

On July 9, 2011, Fountain and his family hosted a birthday party for Fountain's daughter at Hawaiian Falls waterpark in The Colony. Evan Barnett, the regional manager of Hawaiian Falls, testified that near the end of the day on July 9, 2011, a "guest concern" was brought to his attention: a guest was treating a Hawaiian Falls "birthday host" in a derogatory manner. Barnett testified that he saw the manager on duty, Ryan Forshen, attempting to speak with Fountain. Fountain appeared "very angry" and "hostile." Fountain was yelling and threatening Forshen. Fountain then "stormed off." Forshen called the police, and the police issued Fountain a citation for disorderly conduct.

Subsequently, Barnett received from Fountain a four-page, single-spaced letter dated July 10, 2011. The letter included a detailed description of the events that had occurred at Hawaiian Falls on July 9, 2011, from Fountain's perspective. Ultimately, the letter demanded that Hawaiian Falls pay Fountain "damages in the amount of $3750.00," which included a "refund for the park rental, loss of our birthday cake, aggravation, the injury caused by your waterslide, public humiliation and embarrassment, legal fees associated with a false report to the police department by your employees[], and trial for the

2

Disorderly Conduct citation as well as the fine of $500, if needed." Fountain's

letter states,

> I was advised by the police officer who issued the citation that the employees would have to go to the police station and sign some paperwork to decide if the ticket would be pursued in a court of law. In the event that there is no pursuit of such violation, you may subtract $1500.00 (my attorneys' fees and the possible maximum amount of the court fine[)]. In the event that the legal action stated in the above paragraph is not pursued and no attorney is needed for my defense, I would reduce the above sum by $1500.00 for the total sum of $2250.00, as settlement in full for this incident. . . .

> Now, unfortunately like all good legal demand letters, there has to be a paragraph filled with consequences and penalties for your failure to comply with my request. Here is what will happen if you ignore me or fail to respond in a manner to which we may settle this issue.

Fountain's letter then sets forth multiple paragraphs of "consequences" he

intended to inflict if his demands were not met. Fountain stated that he had

previously "forced a Fortune 500 to hire one of the largest, most expensive law

firms in Dallas to represent them, spend over $250,000 in legal fees, caused

literally tens of millions of dollars in other 'other damages[,]' and forced them to

settle within a matter of months." Fountain stated that he would attack Hawaiian

Falls in a multitude of social-media forums, would contact Hawaiian Falls's

corporate business partners, would file online complaints with the Better

Business Bureau and others, would take legal action against Hawaiian Falls—

"this will cost you hourly attorneys' fees[] as well as other fees like when I

subpoena half of your staff that worked that day"—and would then "start the next

phase which is protesting in front of your location." Fountain said that he would

3

"stand[] on the sidewalk in front of [their] business with a megaphone and large professionally produced signs that state such things as 'My 8 year old was injured on a defective, dangerous waterslide!'[] and, 'My family was verbally attacked and threatened by a HF employee.'" So as not to leave any doubt about his intentions, Fountain explained, "My intentions are to prevent any new or existing business, tell my story to as many people as possible, any way possible and start a costly legal battle."

When Hawaiian Falls did not meet Fountain's demands within the five-day deadline Fountain set in his letter, Fountain began to take the actions outlined in his letter. Fountain showed up at the waterpark on several dates and began videotaping guests. The first day, Barnett observed Fountain following people with his video camera in the parking lot. Barnett testified that Fountain's behavior escalated from there; Fountain told Barnett he would be sorry if he did not comply with Fountain's demands because Fountain was "going to make it worse." Barnett testified that Fountain then started setting up a camera on a tripod at the entrance to the waterpark, photographing guests as they entered the park. Fountain placed signs at the entrance to the waterpark—one side of the sign contained a picture of Forshen, and the other side stated that the waterpark hired child molesters. Fountain wore a wig and photographed guests as they passed the signs. As a result of Fountain's actions, both the waterpark and its guests called the police several times.

4

Lieutenant Darren Brockway with The Colony Police Department met with Barnett in August 2011 because Hawaiian Falls wanted to press charges against Fountain. Lieutenant Brockway impounded Fountain's July 10, 2011 letter, confirmed that the letter was from Fountain, and filed a case against him for tampering with a witness.

### III. DENIAL OF MOTION FOR DIRECTED VERDICT WAS PROPER

In his first and second issues, Fountain complains that the trial court erred when it refused to grant a directed verdict at the conclusion of the State's case-in-chief because insufficient evidence exists of the coercion element of the offense and because insufficient evidence exists that Barnett was a prospective witness.

### A. Standard of Review

A challenge to the denial of a directed verdict is a challenge to the sufficiency of the evidence. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003). In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*, 99 S. Ct. at 2789;

5

*Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Thomas*, 444 S.W.3d at 8. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

6

## B. Applicable Law

A person commits an offense of tampering with a witness if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding, *or* he coerces a witness or a prospective witness in an official proceeding to do the following: (1) testify falsely; (2) withhold any testimony, information, document, or thing; (3) to elude legal process summoning him to testify or supply evidence; (4) to absent himself from an official proceeding to which he has been legally summoned; or (5) to abstain from, discontinue, or delay the prosecution of another. Tex. Penal Code Ann. § 36.05(a) (West Supp. 2015); *see also Uyamadu v. State*, 359 S.W.3d 753, 763 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (discussing application of statute to potential State's witness).

The penal code does not define "coerces"; it does, however, define "coercion" as including a threat, however communicated, to expose a person to hatred, contempt, or ridicule or to harm the credit or business repute of any person. Tex. Penal Code Ann. § 1.07(a)(9)(D), (E) (West Supp. 2015). "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant. *Id.* § 1.07(a)(33). "Person" is defined as "an individual, corporation, or association." *Id.* § 1.07(a)(38).

7

## C. Sufficiency Analysis

The State indicted Fountain under the coerces-a-witness portion of the witness-tampering statute, alleging that Fountain had coerced Barnett—a witness or a prospective witness in an official proceeding—to abstain from, discontinue, or delay the prosecution of another. *See id.* § 36.05(a)(5). Thus, a hypothetically correct jury charge in this case would state that Fountain is guilty of tampering with a witness, as alleged in the indictment, if (1) Barnett was a witness or a prospective witness in an official proceeding and (2) Fountain, with the intent to influence Barnett, coerced him to abstain from, discontinue, or delay the prosecution of another. *See id.*

### 1. Barnett is a witness or a prospective witness in an official proceeding

In his second issue, Fountain argues that Barnett does not qualify as "a witness or a prospective witness" because Barnett "did not witness any disorderly conduct and was merely present at the facility[,] only coming out of his office to witness [Fountain] leaving." Fountain further argues that Barnett does not qualify as "a witness or a prospective witness" because the State offered "no direct proof of any disorderly conduct proceeding or any civil lawsuit for Mr. Barnett to participate in as a witness or a prospective witness."

A "prospective witness" is any "person who may testify in an official proceeding"; any person who is involved in an offense with a defendant, who sees the defendant committing an offense, or who hears the defendant discuss committing an offense is a "prospective witness" in the prosecution of that

8

defendant because he "may" testify. *Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002) (addressing sufficiency of evidence to prove "prospective witness" element of retaliation offense under penal code section 36.06(a)(1)(A)), *cert. denied*, 538 U.S. 998 (2003); *see also id.* at 95–96 (Keller, J., concurring) (explaining term "prospective witness" has the same meaning under the retaliation statute and under the tampering-with-a-witness statute). Whether a person will eventually testify does not affect whether he is, before trial, a prospective witness. *Ortiz*, 93 S.W.3d at 86.

Contrary to Fountain's assertion that Barnett did not witness any disorderly conduct, Barnett testified that on July 9, 2011, he did observe Fountain's behavior and did hear the words yelled by Fountain that formed the basis of the disorderly-conduct citation issued to Fountain. And contrary to Fountain's assertion, the State did offer direct evidence of an "official proceeding." Barnett's testimony and Fountain's letter conclusively established that police had issued a disorderly-conduct citation to Fountain; no requirement exists that the State prove a prosecution or a disposition concerning the citation to meet the definition of "official proceeding." *See* Tex. Penal Code Ann. § 1.07(a)(33) (defining "official proceeding" as including "any type of . . . judicial proceeding that *may* be conducted before a public servant") (emphasis added); *Nzewi v. State*, 359 S.W.3d 829, 833 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) ("[T]he witness-tampering statute is not limited to witnesses or prospective witnesses who may be called by the State to give testimony during criminal trials."); *see*

9

*also* Tex. Penal Code Ann. § 1.05(a) (West 2011) (mandating that penal-code provisions "shall be construed according to the fair import of their terms"). Thus, viewed in the light most favorable to the judgment, a rational trier of fact could have found beyond a reasonable doubt that Barnett was a witness or a prospective witness in an "official proceeding"—Fountain's prosecution for disorderly conduct. *See Ortiz*, 93 S.W.3d at 86; *Uyamadu*, 359 S.W.3d at 763–64. We overrule Fountain's second issue.

## 2. Fountain coerced Barnett

In his first issue, Fountain challenges the sufficiency of the evidence to establish the coercion element of the offense of tampering with a witness. Fountain claims that no evidence exists that he coerced Barnett.

"Coercion" is defined as a threat to expose a person to hatred, contempt, or ridicule or a threat to harm the credit or business repute of any person. *See* Tex. Penal Code Ann. § 1.07(a)(9)(D), (E). And "person" is defined as "an individual, corporation, or association." *Id.* § 1.07(a)(38). Fountain's "demand letter" to Barnett that specifically offers to reduce the amount of money demanded by Fountain—"[i]n the event that there is no pursuit of [the disorderly-conduct] violation, you may subtract $1500.00 [from the monies demanded by Fountain]"—and that specifically threatens to make all efforts possible to damage the business and reputation of Hawaiian Falls—"[m]y intentions are to prevent any new or existing business, tell my story to as many people as possible, any way possible and start a costly legal battle"—constitutes evidence that Fountain

10

coerced Barnett. *See, e.g.*, *Lujan v. State*, No. 03-02-00691-CR, 2004 WL 334516, at \*4–5 (Tex. App.—Austin Feb. 12, 2004, pet. ref'd) (mem. op., not designated for publication) (holding defendant's letter to minor victim's mother—who was defendant's ex-wife and also mother of two of defendant's children—offering to settle victim's sexual-assault claims against him and detailing bevy of financial hardships that would befall defendant and the couple's children if assault case was not settled, constituted sufficient evidence of coercion under witness-tampering statute); *Johnson v. State*, No. 14-03-00412-CR, 2003 WL 22908207, at \*2–4 (Tex. App.—Houston [14th Dist.] Dec. 11, 2003, no pet.) (mem. op., not designated for publication) (holding, after workplace incident resulting in issuance of misdemeanor assault citation to defendant, that defendant's offer to pay victim $300 to drop the charge constituted sufficient evidence of coercion under witness-tampering statute). That is, by threatening to harm the business and reputation of Hawaiian Falls and by threatening to expose Hawaiian Falls to contempt, Fountain coerced Barnett—a witness or a prospective witness in an official proceeding (Fountain's disorderly-conduct prosecution)—to abstain from, discontinue, or delay the prosecution of another (Fountain's prosecution for disorderly conduct).[2]  *See* Tex. Penal Code Ann. § 36.05(a).

---

[2]Fountain attempts on appeal to classify his letter to Barnett as a "civil demand letter" protected by the First Amendment.  To the extent Fountain's letter proposes settlement of civil claims, his characterization of it may be correct.  But to the extent Fountain's letter requests that no action be taken by Barnett and

11

Viewed in the light most favorable to the judgment, a rational trier of fact could have found beyond a reasonable doubt that Fountain, with the intent to influence Barnett, coerced Barnett by threatening to expose Hawaiian Falls to contempt by threatening to harm the business or reputation of Hawaiian Falls if Barnett did not abstain from or discontinue prosecution of Fountain's disorderly-conduct charge.  *See* Tex. Penal Code Ann. §§ 1.07(a)(9)(D), (E), 36.05(a)(5); *see also Lujan*, 2004 WL 334516, at *4–5; *Johnson*, 2003 WL 22908207, at *2–4; *cf. Roberts v. State*, 278 S.W.3d 778, 793–94 (Tex. App.—San Antonio 2008, pet. ref'd) (holding evidence of coercion sufficient to support conviction for unlawful appropriation of property without consent by coercion).  We overrule Fountain's first issue.

## IV. Conclusion

Having overruled Fountain's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER, J.; and FITZGERALD, J. (Senior Justice, Retired, Sitting by Assignment).

---

Hawaiian Falls to pursue the disorderly-conduct citation Fountain received and to the extent Fountain offers to accept a reduced settlement dollar amount if Barnett and Hawaiian Falls do not pursue the disorderly conduct violation, the letter is not a "civil demand letter."  Instead, it is the type of criminal nonprosecution demand letter that other courts have found violates the witness-tampering statute.  *See Lujan*, 2004 WL 334516, at *4–5; *Johnson*, 2003 WL 22908207, at *2–4.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 28, 2016